## AMERICAN BELL TELEPHONE Co. *v.* PEOPLE'S TELEPHONE Co. and others.[1]

*(Circuit Court, S. D. New York.   1885.)*

1. PATENTS FOR INVENTIONS—EVIDENCE—PRIOR USE.
    Where the evidence of new witnesses (as to a prior use) introduced on re-hearing was merely cumulative and less persuasive than the evidence to the same point on the former trial, *held*, that the decree should not be disturbed.
2. SAME—REDUCTION TO PRACTICAL USE.
    The testimony of witnesses as to the practicability of alleged prior devices incredible where a test of reproductions of those devices showed them to be practically inoperative.
3. SAME—FAILURE TO MAKE PRACTICABLE MACHINE.
    Where the alleged prior inventor was shown to be very near the realization of the invention, but could not, at a period long subsequent, make a practical machine embodying the invention, it was *held*, that his operations were not sufficient to defeat a patent, although witnesses testified that they were successful.
4. SAME—BELL TELEPHONE.
    Drawbaugh's talking-machine *held* insufficient as a prior use.

In Equity.
*E. N. Dickerson* and *E. J. Stower*, for complainants.
*Henry C. Andrews* and *Lysander Hill*, for defendant.

WALLACE, J.   Since the decision of this case, in December last, additional proofs have been taken on the part of the defendants, and by consent of complainants have been presented for the further consideration of the court after argument of counsel.   All the new evidence is cumulative merely.   Such as consists of the testimony of new witnesses to knowledge of the existence of Drawbaugh's talking-machine prior to the date of Bell's patent is far less persuasive than much which has already been considered and rejected as incredible. Such as is intended to show that the earlier instruments made by Drawbaugh were capable of practical use in transmitting articulate speech is more important.   The instruments which were introduced as reproductions of lost originals, representing Exhibits B, F, and C, and which were constructed by Drawbaugh, or under his supervision, as accurate reproductions of the originals, were shown to be practically inoperative.   After they had been introduced in evidence, and the expert witness for the defendants had testified that he had found them to be good practical instruments, a test of their efficiency was made at the request of counsel for the complainants which took place in the presence of the experts and of the counsel for both parties. This test, which was made in 1882, indicated decisively that the testimony of a large number of witnesses respecting experiments with Drawbaugh's earlier instruments on various occasions in the years 1869 to 1876 was unreliable.   While, according to the testimony of these witnesses, the instruments invariably operated satisfactorily

[1] Reported by Charles C. Linthicum, Esq., of the Chicago bar.
Affirmed.   See 8 Sup. Ct. Rep. 778.

upon the occasions of which the witnesses spoke, and no difficulty was experienced or observed by them in the transmission of the messages sent over or heard through the instruments, it was demonstrated by the experiment, in 1882, that under more favorable conditions speech could only be occasionally transmitted by the reproduced instruments, and that, generally, what was spoken, if transmitted at all, was transmitted in a fragmentary or incoherent form. Whether these instruments were, in fact, reproductions of original instruments was a question which depended solely upon the testimony of Drawbaugh. But assuming that his testimony was true, and that they were reproductions, it was impossible to doubt that they were the best that Drawbaugh knew how to construct after he had become a much more accomplished electrician than he was when, according to his testimony, he made the originals.

Since the former decison new reproductions of these alleged originals have been made from the remnants of the originals, supplemented by drawings verified as correct by Drawbaugh from memory, and it now appears that these reproductions are practical instruments, and fully capable of transmitting articulate speech successfully. It does not appear that Drawbaugh made them, or who made them; and no testimony has been introduced to explain the reason of the failure of the instruments made by Drawbaugh to operate satisfactorily. It appears from the testimony of the only witnesses adduced to the point that, upon a comparison of the former and the recent reproductions, the recent ones are improved in finish and detail of mechanism in respects calculated to improve the efficiency of the apparatus; and it also seems probable that the increased efficiency of Exhibit F, the more important of the reproductions, is due to the employment of a new conducting material between the back plate of the cell and the diaphragm of the transmitter, adapted for the adjustment in a mode never practiced by Drawbaugh, and made the subject of a patent to Henry Hunnings of the date of August 30, 1881. The legitimate effect of the evidence is to show that Drawbaugh was very near the realization of the invention if he had really constructed instruments like the Exhibits F, B, and C prior to the date of Bell's patent. It does not, however, alter the fact that he was unable to make such instruments at a period long subsequent to the time when he claims to have made them; and, in view of this fact, the evidence does not tend to materially fortify the testimony of the witnesses who think, or profess to think, that they heard or saw efficient practical instruments in operation at Drawbaugh's shop on the occasions to which they refer.

The conclusions which were reached at the former hearing have not been modified, and the decree ordered should not be disturbed.